# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ASSURANCE COMPANY OF AMERICA, | ) | |
| as subrogee of PARK PLAZA, INC., DOVE | ) | |
| MEDICAL, INC., and DR. TIMOTHY | ) | |
| ROBISON and HARTFORD CASUALTY | ) | |
| INSURANCE COMPANY, as subrogee of | ) | |
| Muskogee Diagnostic Imaging Center | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: CIV-10-472-FHS |
| | ) | |
| SIEMENS MEDICAL SOLUTIONS USA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

_____

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT & MOTION TO PRECLUDE PLAINTIFFS' EXPERTS ROBERT DURHAM AND MICHAEL BRADY FROM OFFERING CAUSATION TESTIMONY

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT & MOTION TO PRECLUDE PLAINTIFFS' EXPERTS
ROBERT DURHAM AND MICHAEL BRADY FROM OFFERING CAUSATION
TESTIMONY ................................................................................................................... 1

STATEMENT OF MATERIAL FACTS IN DISPUTE ..................................................... 2

LEGAL ARGUMENT ...................................................................................................... 4

I.      SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON PLAINTIFFS' CLAIMS
        OF GROSS NEGLIGENCE AND WILLFUL MISCONDUCT IS NOT PROPER,
        BECAUSE THE UNDISPUTED TESTIMONY SUPPORTS A FINDING THAT
        DEFENDANT'S EMPLOYEE, WADE POWELL, HAD KNOWLEDGE OF THE
        DANGERS ASSOCIATED WITH USING THE NON-APPROVED, NON-SIEMENS
        FAN AND RECKLESSLY CHOSE THE QUICK AND EASY FIX. ............................. 4

II.     THIS COURT SHOULD DENY DEFENDANT'S REQUEST FOR SUMMARY
        JUDGMENT LIMITING DAMAGES TO $53,500, BECAUSE DEFENDANT'S
        INTERPRETATION OF THE CONTRACT REQUIRES READING ONE CLAUSE
        OUT OF CONTEXT AND IGNORING THE PLAIN LANGUAGE LIMITING THE
        CONTRACT'S DURATION. ......................................................................................... 9

III.    THE EXPERT TESTIMONY OF ROBERT DURHAM AND MICHAEL BRADY
        SHOULD NOT BE EXCLUDED, BECAUSE THEIR TESTIMONY IS BASED ON
        REASONABLE INFERENCES AND SATISFIES BOTH RULE 702 AND DAUBERT,
        NEITHER OF WHICH REQUIRE AN EXPERT TO ELIMINATE ALL OTHER
        POSSIBLE CAUSES OF A FIRE. ................................................................................ 10

        A.      The testimony of Plaintiffs' experts satisfies the spirit of Bitler and is reliable
                enough to satisfy a Daubert analysis even though the magic words "highly
                improbable ignition source" were not used. ........................................................ 12

        B.      The opinions rendered by Plaintiffs' experts are supported by reliable scientific
                methodology and thus satisfy the standard for admissibility. ............................... 14

IV.     DISMISSAL BASED ON ALLEGED SPOLIATION IS NOT WARRANTED,
        BECAUSE PLAINTIFFS DID NOT ACT IN BAD FAITH AND THERE IS NO
        EVIDENCE OF "ACTUAL" PREJUDICE. .................................................................. 16

        A.      There is no evidence of bad faith on the part of Plaintiffs. ................................... 17

        B.      Dismissal is not warranted, because Defendant has failed to establish actual
                prejudice. ............................................................................................................. 18

V.      DEFENDANT'S REQUST FOR DISMISSAL DUE TO FAILURE TO ATTACH
        AFFIDAVIT OF EXPERT SHOULD BE DENIED BECAUSE OKLAHOMA
        STATUTE TITLE 12, SECTION 19 IS NOT APPLICABLE TO THIS LAWSUIT ...... 20

# TABLE OF AUTHORITIES

**Cases**

*Allstate Insurance Co. v. Hugh Cole Builder, Inc.*,
137 F. Supp. 2d 1283 (M.D. Ala. 2001) ................................................................. 16

*Aramburu v. Boeing Co.*,
112 F.3d 1398 (10th Cir. 1997) ........................................................................... 20

*Baliotis v. McNeil*,
870 F. Supp. 1285 (M.D. Pa. 1994) ..................................................................... 20

*Bitler v. A.O. Smith Corp.*,
400 F. 3d 1227 (10th Cir. 2005) ............................................................... 14, 15, 17

*Burlington Northern and Santa Fe Ry. Co. v. Grant*,
505 F.3d 1013 (10th Cir. 2007) ...................................................................... 19, 23

*Clark v. Heidrick*,
150 F.3d 912  (8th Cir. 1998). ............................................................................. 11

*Crown Castle USA, Inc. v. Fred A. Nudd Corp.*,
2010 WL 1286366, at *10 (W.D.N.Y. Mar. 31, 2010) ........................................... 20

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579  (1993) ............................................................................... passim

*Dodge v. Cotter Corp.*,
328 F.3d 1212 (10th Cir. 2003) ........................................................................... 11

*Donohoe v. American Isuzu Motors, Inc.,*
155 F.R.D. 515 (M.D. Pa. 1994) .......................................................................... 19

*Fox v. Oklahoma Mem'l Hosp.*,
774 P.2d 458 (Okla. 1989) .................................................................................... 5

*Gallawhur Chemical Corp. v. Schwerdle*,
117 A.2d 416 (N.J. Super. 1955) ......................................................................... 10

*Goebel v. Denver and Rio Grande Western R.R. Co.*,
346 F.3d 987 (10th Cir. 2003) ............................................................................. 14

*Graham v. Keuchel*,
847 P.2d 342 (Okla. 1993) ............................................................................... 4, 5

*Gussack Realty Corp. v. Xerox Corp.*,
224 F.3d 85 (2d Cir. 2000) .................................................................................. 24

*Henkel Corp. v. Polyglass United States*,
194 F.R.D. 454 (E.D.N.Y. 2000) ......................................................................... 20

*Henning v. Union Pac. R.R. Co.*,
530 F.3d 1206 (10th Cir. 2008) ...................................................................... 19, 21

*Hickerson v. Pride Mobility Products Corp.*,
2006 WL 290587, *3 (W.D. Mo. 2006) ................................................................. 16

*Howell v. Maytag*,
168 F.R.D. 502 (M.D. Pa. 1996) .......................................................................... 21

*In re TMI Litigation*,
193 F.3d 613 (3d Cir. 1999) ................................................................................ 18

*Kronisch v. United States*,
150 F.3d 112 (2d Cir.1998) ................................................................................. 22

*McCoy v. Whirlpool Corp.*,
2003 WL 1923016, *3 (D. Kan. April 21, 2003) ................................................ 18

*McGee v. Evenflo Co., Inc.*,
2003 WL 23350439, *4 (M.D. Ga. 2003) ........................................................... 17

*Morales v. E. D. Etnyre & Co.*,
382 F.Supp.2d 1252 (D.N.M. 2005) .................................................................... 17

*Pipitone v. Biomatrix, Inc,.*
288 F.3d 239 (5th Cir. 2002) ............................................................................... 12

*Rowe v. Albertson's, Inc.*,
2006 WL 1484918, *2 (10th Cir. 2006) .............................................................. 22

*Spottedcorn v. Advanced Correctional Healthcare, Inc.*,
2011 WL 6100653 (W.D. Okla. Dec. 7, 2011) ................................................... 25

*Torske v. Bunn-O-Matic Corp.*,
2005 WL 1717649, *3 (D.N.D. 2004) ................................................................. 16

*Turner v. Public Service Co. of Colorado*,
563 F.3d 1136 (10th Cir. 2009) ..................................................................... 19, 23

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) ........................................................................... 12

*United States v. Gardner*,
211 F.3d 1049 (7th Cir. 2000) ............................................................................. 24

*Workman v. AB Electrolux Corp.*,
2005 WL 1896246, *10 (D. Kan. 2005) .............................................................. 17

## **Statutes**

Oklahoma Statute,
Title 12, Section 19 ....................................................................................... 4, 20

## **Other Authorities**

Michael H. Graham,
Federal Practice and Procedure § 7003 (interim ed.2006) .................................. 18

National Fire Protection Association, *Guide for Fire and Explosion Investigations*, NFPA 921
(Quincy 2008) ...................................................................................................... 15

Prosser & Keeton, The Law of Torts,
Ch. 5, § 34 (5th Ed.1984) ...................................................................................... 4

Restatement (Second) of Torts,
§ 500, cmt. g (1965).................................................................................................. 4

**<u>Rules</u>**

Federal Rule of Evidence
702 ......................................................................................................................... 11

Local Rule 56.............................................................................................................. 2

<u>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT & MOTION TO PRECLUDE PLAINTIFFS' EXPERTS
ROBERT DURHAM AND MICHAEL BRADY FROM OFFERING CAUSATION
TESTIMONY**</u>

Plaintiffs, ASSURANCE COMPANY OF AMERICA, as subrogee of Park Plaza Inc.,

Dove Medical, Inc., and Dr. Timothy Robison, and HARTFORD CASUALTY INSURANCE

COMPANY, as subrogee of Muskogee Diagnostic Imaging Center ("Plaintiffs"), by and through

their undersigned counsel and pursuant to the Federal Rules of Civil Procedure, hereby file this

Memorandum in Opposition to Defendant, SIEMENS MEDICAL SOLUTIONS USA, INC.'s

Motion for Summary Judgment and Defendant, SIEMENS MEDICAL SOLUTIONS USA,

INC.'s Motion to Preclude Plaintiffs' Experts Robert Durham and Michael Brady From Offering

Causation Testimony, and state as follows:

On December 8, 2011, Defendant, SIEMENS MEDICAL SOLUTIONS USA, INC.

("SIEMENS") filed its Motion for Summary Judgment asking the Court to dismiss Plaintiffs'

claims for gross negligence and willful misconduct, and rule that Plaintiffs' damages are limited

to $53,500 pursuant to A five-year Service Agreement signed by the parties on September 8,

2003.  (*See* Def.'s Mot. for Summ. J. (Dkt. 68), at pg. 2-3.)  In its Motion for Summary

Judgment, Defendant also asked the Court to dismiss all Plaintiffs' claims either for lack of

competent expert testimony or as a sanction for alleged spoliation of evidence.  (*See* Def.'s Mot.

for Summ. J. (Dkt. 68), at pg. 2-3.)  The purported reasoning behind these requests is set forth in

a separate Motion to Preclude Plaintiffs' Experts Robert Durham and Michael Brady From

Offering Causation Testimony, which is referenced in Defendant's Motion for Summary

Judgment.  (*See* Def.'s Mot. to Preclude Pl.'s Experts (Dkt. 67).)  Lastly, Defendant seeks

dismissal for failure to comply with the procedural requirements of Oklahoma Statute title 12 §

1

19. (*See* Def.'s Mot. for Summ. J. (Dkt. 68), at pg. 3.) However, summary judgment in favor of Defendant is not warranted, because there are issues of material fact and Defendant's positions are unsupported by law.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to Local Rule 56, Plaintiffs list the following material facts that are in dispute:

1.      In paragraph one of Defendant's Statement of Facts in its Motion for Summary Judgment, Defendant cites to "Plaintiffs' Petition (Dkt. 2-1)" and states that "Muskogee Diagnostic filed suit against Siemens . . . ." This statement of fact is disputed in that Muskogee Diagnostic Imaging Center is not a party to this lawsuit. The lawsuit was filed by ASSURANCE COMPANY OF AMERICA, as subrogee of PARK PLAZA, INC., DOVE MEDICAL, INC., and DR. TIMOTHY ROBISON, and HARTFORD CASUALTY INSURANCE COMPANY, as subrogee of Muskogee Diagnostic Imaging Center.

2.      In paragraph three of Defendant's Statement of Facts in its Motion for Summary Judgment, Defendant cites to its "Exhibit 1, Service Agreement," and states "Muskogee Diagnostic entered into a Service Agreement with Siemens . . . ." This statement of fact is disputed to the extent Defendant uses "Muskogee Diagnostic" as a reference to Plaintiffs. While Plaintiff, HARTFORD CASUALTY INSURANCE COMPANY is the subrogee of Muskogee Diagnostic Imaging Center, ASSURANCE COMPANY OF AMERICA is not. Rather ASSURANCE COMPANY OF AMERICA is the subrogee of Park Plaza, Inc. Dove Medical, Inc., and Dr. Timothy Robison. Significantly, none of ASSURANCE COMPANY OF AMERICA's subrogors were a party to the September 8, 2003, Service Agreement.

3.      In paragraph five of Defendant's Statement of Facts in its Motion for Summary Judgment, Defendant cites to its "Exhibit 1, Service Agreement, § 10" and states that "The

Service Agreement includes a limitation-of-liability clause under which Muskogee Diagnostic agreed that Siemens' maximum liability to Muskogee Diagnostic, for any claim, including any claim in contract or in tort, would not exceed one year's maintenance charges under the Service Agreement." This statement of fact is disputed in that it fails to clarify that this provision is set forth in a contract that expired by its own terms five years after execution.

4. Per the terms of the Service Agreement, all contractual provisions expired on September 8, 2008. (*See* Def.'s Mot. for Summ. J., Ex. 1.)

5. In paragraph twelve of Defendant's Statement of Facts in its Motion for Summary Judgment, Defendant cites to its "Exhibit 2, Powell Depo., at 184" and states that "[Wade Powell] did not testify to any contemporaneous awareness that clipping the fan to the computer furniture or that leaving it clipped to the furniture created a hazard." This statement of fact is disputed in that it is in no way supported by the testimony cited to on page 184 of the transcript or any other testimony by Mr. Powell.

6. In paragraph fourteen of Defendant's Statement of Facts in its Motion for Summary Judgment and in paragraph four of Defendant's Statement of Facts in its Motion to Exclude Plaintiffs' Experts, Defendant cites to its "Exhibit 3, Deposition of Toby Webb, at 79, 120-125" and states "The fire marshal who investigated it concluded that the cause of the fire could not be determined." This statement of fact is disputed in that it fails to fully set forth the context in which the statement was made. Specifically, Mr. Webb clarified he did not attempt to identify the cause of the fire, because after identifying the area of origin, it was not his job to continue the investigation and determine a specific cause of the fire. (*See* Pl.'s Mot. for Summ. J., Ex. B at 150:1-152:25.)

7. In paragraph five of Defendant's Statement of Facts in its Motion to Exclude

Plaintiffs' Experts, Defendant cites to its "Exhibit 2, Notice of Claim Letter" and states "Siemens was put on notice of the claim on December 11, 2009." This statement of fact is disputed in that the Notice of Claim letter attached is dated December 11, 2008.

8.    The Notice of Claim letter sent to Defendant on December 11, 2008, states "If you wish to inspect the stored artifact evidence and / or the premises, we request that you contact our office immediately." (*See* Def.'s Mot. to Preclude Pl.'s Experts, Ex. 2.)

## LEGAL ARGUMENT

I.    **SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON PLAINTIFFS' CLAIMS OF GROSS NEGLIGENCE AND WILLFUL MISCONDUCT IS NOT PROPER, BECAUSE THE UNDISPUTED TESTIMONY SUPPORTS A FINDING THAT DEFENDANT'S EMPLOYEE, WADE POWELL, HAD KNOWLEDGE OF THE DANGERS ASSOCIATED WITH USING THE NON-APPROVED, NON-SIEMENS FAN AND RECKLESSLY CHOSE THE QUICK AND EASY FIX.**

Contrary to Defendant's assertion that "Oklahoma law does not draw a distinction between gross negligence and willful misconduct," (*see* Def.'s Mot. for Summ. J. (Dkt. 68), pg. 10), the Supreme Court of Oklahoma has expressly recognized a difference. For example, in *Graham v. Keuchel*, 847 P.2d 342 (Okla. 1993), the Supreme Court noted that "while 'ordinary' and 'gross' negligence differ in degree, 'negligence' and 'willful and wanton misconduct' differ in kind." *Graham*, 847 P.2d at 362 (citing Prosser & Keeton, The Law of Torts, Ch. 5, § 34, p. 212 (5th Ed.1984); Restatement (Second) of Torts, § 500, cmt. g (1965)). More specifically, gross negligence is the lack of slight care and diligence, Okla. Stat. tit. 25 § 6 (2008), whereas willful misconduct denotes a higher level of culpability, because it requires knowledge that damages are likely to occur. *Graham*, 847 P.2d at 362-63. Accordingly, Defendant's assertion that the claims should be dismissed "for the same reasons" is not an accurate representation of

Oklahoma tort law.[1]  That is, a claim for gross negligence may be supported by the facts even if a claim for willful misconduct is not.  Furthermore, the reasons given by Defendant in support of dismissal are not supported factually or legally.

Defendant alleges "There is no evidence that [Wade Powell] had any inkling that placing the fan outside the cabinet would create a fire hazard."  (*See* Def.'s Mot. for Summ. J. (Dkt. 68), at pg. 5.)  If this assertion is taken as true, it is <u>only</u> true because Mr. Powell chose to do the least amount of work possible and failed to ask the requisite questions that would have led to an appreciation of the dangers involved.  SIEMENS' policy required Mr. Powell to look into the associated dangers before utilizing non-approved items.  (*See* Pl.'s Mot. for Summ. J., Ex. H at 26:6-10, 12-18; Pl.'s Mot. for Summ. J., Ex. I at 46:22-47:15.)  In fact, SIEMENS' corporate representative expressly stated in his deposition that purchasing a consumer fan from Wal-Mart is not a SIEMENS approved method solution to the problem identified by Mr. Powell.  (*See* Finis Dep. 69:8-70:22, Oct. 25, 2011, attached hereto as Exhibit "A.")  that    Contrary to company policy, Mr. Powell made no effort to protect the property of Muskogee Diagnostic.  Mr. Powell's carelessness and lackluster efforts are demonstrated by the following testimony by Mr. Powell:

> Q:  Prior to installing the fan at MDI on the Emotion machine, did you contact any supervisor to get their input before you did that?
> A:  No.
> Q:  Prior to installing the fan at MDI on the Emotion machine, did you contact anyone with quality assurance or quality control?
> A:  No.
> Q:  Prior to installing the fan at MDI on the Emotion machine, did you contact anyone over in Germany?
> A:  No.

---

[1] The definition of gross negligence cited by Defendant was set forth in *Fox v. Oklahoma Mem'l Hosp.*, 774 P.2d 458 (Okla. 1989).  However, when explaining the difference in gross negligence and willful misconduct, the Oklahoma Supreme Court later clarified that the *Fox* case was an example of when grossly negligent acts are so flagrant, deliberate, or reckless that the acts are considered willful and wanton *for the purpose of assessing punitive damages*.  *Graham*, 847 P.2d at 362-63 n.108.

Q:     Prior to installing the fan on the MDI Emotion machine, did you contact the project manager for the MDI original installation?

A:     No.

Q:     Prior to installing the fan on the MDI Emotion machine, did you contact anyone within Siemens to get their approval before doing that installation?

A:     No.

Q:     Prior to installing the fan at the MDI – on the MDI Emotion machine, did you contact anyone outside of Siemens to get their approval for the installation of the fan?

A:     No.

Q:     Prior to installing the -- after installing the fan at MDI, did you notify anyone within Siemens that the fan was installed?

A:     No.

Q:     After installing the fan at MDI, did you contact anyone within Siemens to have any risk analysis performed for any risk, danger, or hazard that may be posed by the installation of the fan?

A:     No.

Q:     After installing the fan at MDI, did you contact anyone within Siemens to determine from Siemens' perspective if the installation of a fan was an appropriate remedy?

A:     No.

Q:     Prior to installing the fan at MDI, did you contact the manufacturer of the fan to verify if the fan -- if the use of the fan in how you were going to be installing it was an expected, anticipated, or a design for use of that fan?

A:     No.

Q:     After installing the fan at MDI, did you contact the fan's manufacturer to verify if the use of that fan was expected, anticipated, or designed for by that fan's manufacturer?

A:     No.

Q:     At any point in time before or after installation of the fan, did you contact any Siemens -- any design engineers for the Emotion 6 machine to determine if the use of the fan was an appropriate remedy?

A:     No.

Q:     Did you perform any trouble -- prior to the installation of the fan, did you perform any risk analysis or fault tree analysis to determine if there were any risks, dangers, or hazards posed by the installation of the fan?

A:     No.

Q:     Before or after installing the fan, did you perform any troubleshooting steps to determine if the installation of the fan was an appropriate remedy to do?

A:     No.

(*See* Pl.'s Mot. for Summ. J., Ex. E at 45:23-48:14.)  SIEMENS should not be permitted to hide

behind the violations of its own employee in an attempt to decrease its culpability.

Moreover, Plaintiffs do not concur in Defendant's assertion that the record is void of evidence establishing Mr. Powell's knowledge of potential hazards. Mr. Powell was a long time employee of SIEMENS and was adequately trained by SIEMENS. (*See* Spicer Dep. 9:20-12:9, Oct. 21, 2011, attached hereto as Exhibit "B.") The record is filled with testimony establishing Mr. Powell acted in violation of the policies and standard practices of SIEMENS:

- The technician should have called tech support if he was not sure of the appropriate remedy. (*See* Pl.'s Mot. for Summ. J., Ex. H at 27:24-28:17; 29:13-20.)

- Before attaching a fan, you need to do a fault tree or risk analysis. (*See* Pl.'s Mot. for Summ. J., Ex. H at 26:6-10, 12-18.)

- There was no reason to consider installing a non-Siemens fan. (*See* Pl.'s Mot. for Summ. J., Ex. I at 42:7-18.)

- Before installing a non-Siemens fan, he would fill out a customer complaint form to get manufacturer advice. (*See* Pl.'s Mot. for Summ. J., Ex. I at 46:22-47:15.)

- It is important to verify how a non-Siemens product will interact with a Siemens product before installing it. (*See* Pl.'s Mot. for Summ. J., Ex. J at 59:17-25.)

- Before installing the non-Siemens fan, the technician should have followed the instructions in the safety manual. (*See* Pl.'s Mot. for Summ. J., Ex. I at 64:7-25; 75:1-25.)

This undisputed testimony is sufficient to establish that Mr. Powell, as a Siemens technician, <u>did</u> have knowledge of the dangers associated with using non-approved, non-Siemens items. Additionally, the testimony establishes that despite the dangers, Mr. Powell intentionally disregarded the safety standards. This evidence supports a finding of willful misconduct. Moreover, even if Mr. Powell's conduct does not rise to the level of willful and wanton, the

evidence strongly supports a finding of gross negligence. Mr. Powell himself testified that he used a quick fix because he was lazy. (*See* Pl.'s Mot. for Summ. J., Ex. E at 183:16-184:1.) He also testified that he came to learn the fan was a needless component yet never bothered to remove it. (*See* Pl.'s Mot. for Summ. J., Ex. E at 183:9-184:11.) This complete disregard for known safety standards and the failure to rectify a known safety violation over a period of several months constitutes the lack of slight care and diligence associated with gross negligence.

The testimony of Mr. Powell undermines Defendant's assertion that a finding of willful misconduct under the facts of this case would eviscerate the distinction between simple negligence and willful misconduct. (*See* Def.'s Mot. for Summ. J. (Dkt. 68), at pg. 10.) Such an argument fails to take into account the circumstances surrounding Mr. Powell's negligent act. First, Mr. Powell did not merely install an unauthorized piece of equipment against his better judgment, rather he installed the cheap Wal-Mart fan in direct contravention of SIEMENS' protocol and the safety guidelines. Additionally, Mr. Powell did not merely fail to properly implement the appropriate remedy for overheating, rather he intentionally chose the cheap and quick fix. Furthermore, Mr. Powell did not negligently act on just one occasion. Instead, he admitted that he was lazy and let his quick fix stay in place day after day with full knowledge that it was in violation of SIEMENS' safety guidelines and the instructions that came with the fan itself. Thus a finding of more than mere negligence in this case is supported by the facts and will not render Oklahoma law meaningless as suggested by Defendant.

Given the undisputed record evidence noted above supports both a finding of gross negligence and willful misconduct, summary judgment should be granted in favor of Plaintiffs. However, at the very least, whether Defendant's negligence rises to the level of gross negligence or willful misconduct is a matter for the jury to determine, because such a finding can and is

supported by the current record. Accordingly, summary judgment in favor of Defendant on the claims of gross negligence and willful misconduct is not warranted.

**II.     THIS COURT SHOULD DENY DEFENDANT'S REQUEST FOR SUMMARY JUDGMENT LIMITING DAMAGES TO $53,500, BECAUSE DEFENDANT'S INTERPRETATION OF THE CONTRACT REQUIRES READING ONE CLAUSE OUT OF CONTEXT AND IGNORING THE PLAIN LANGUAGE LIMITING THE CONTRACT'S DURATION.**

Defendant claims that Plaintiffs' damages are limited to $53,500 pursuant to the terms of the five-year Service Agreement signed on September 8, 2003. (*See* Def.'s Mot. for Summ. J. (Dkt. 68), pg. 11.) At the outset, it must be noted that neither Park Plaza, Inc. Dove Medical, Inc., nor Dr. Timothy Robison were parties to the September 8, 2003 Service Agreement. Therefore, as a matter of law, Defendant's claim that the damages of ASSURANCE COMPANY OF AMERICA are limited per the Service Agreement is without merit and should be denied. (*See* Assurance's Mot. for Partial Summ. J. (Dkt. 64).)

Additionally, in arguing for a limitation on damages, Defendant focuses only on one line from the Service Agreement. Specifically, Defendant states that the contractual limitation on liability applies to claims "arising under the Agreement," and therefore, must apply to the facts of this case. (*See* Def.'s Mot. for Summ. J. (Dkt. 68), pg. 13.) This argument fails in light of the contract duration provision of the Service Agreement which gives context to all other provisions including the limitation on liability provision.

Provisions in a contract must be read in harmony so as not to create an inconsistency amongst the terms. *Gallawhur Chemical Corp. v. Schwerdle*, 117 A.2d 416 (N.J. Super. 1955). When this rule of contract interpretation is applied to a contract with an express duration, it then follows that the duration must apply to all terms unless specifically stated otherwise. Any other interpretation would create an impermissible inconsistency. Moreover, if the stated duration

9

does not automatically apply to each contract provision, there would be a need to include the phrase "for the duration of the contract" to the end of every provision. This excess language is unnecessary and was not utilized in the Service Agreement between SIEMENS and Muskogee Diagnostic.

SIEMENS demonstrated its understanding that the five year contract duration automatically applied to all terms when it chose to expressly extend the applicability of certain terms beyond the expiration of the contract. Specifically, in paragraph thirteen of the Service Agreement entitled "Government Access Clause," SIEMENS agrees to make available certain documents "Until the expiration of four (4) years after the furnishing of any services under this Agreement . . ." (*See* Def.'s Mot. for Summ. J., Ex. 1.) If SIEMENS had not expressly modified the time frame for which paragraph thirteen was applicable, then SIEMENS would have no contractual obligation to provide certain documents once the contract expired. Similarly, since SIEMENS did not modify the time frame for which the limitation of liability applies, the parties are not bound by its terms once the contract expires. Had SIEMENS intended to limit its liability for a period longer than the contract's five-year duration, it knew how to do so. However, no such language was included. Therefore, the contract's five-year duration must be applied, and the limitation of liability should be held inapplicable to damages incurred following the contract's expiration. Accordingly, Defendant's request for summary judgment limiting Plaintiffs' damages to $54,500 is not warranted.

## III. THE EXPERT TESTIMONY OF ROBERT DURHAM AND MICHAEL BRADY SHOULD NOT BE EXCLUDED, BECAUSE THEIR TESTIMONY IS BASED ON REASONABLE INFERENCES AND SATISFIES BOTH RULE 702 AND DAUBERT, NEITHER OF WHICH REQUIRE AN EXPERT TO ELIMINATE ALL OTHER POSSIBLE CAUSES OF A FIRE.

It is within this Court's discretion to permit or exclude expert testimony. *Dodge v. Cotter*

*Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003). If there is any doubt as to admissibility, the Court should admit the expert testimony rather than exclude it, because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional, and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993; *see also Clark v. Heidrick*, 150 F.3d 912, 914 (8th Cir. 1998).

When deciding whether expert testimony should be admitted, a court looks both to Federal Rule of Evidence 702 and the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*. Rule 702 requires that expert testimony be based on sufficient facts or data, and the product of reliable methods that were applied reliably to the facts of the case. Fed. R. Evid. 702. Additionally, the United States Supreme Court in *Daubert* set forth the following four factors for a court to consider when evaluating the reliability of an expert's testimony: (1) the testability of the expert's hypotheses; (2) whether the expert's methodology has been subjected to peer review; (3) the rate of error associated with the methodology; and, (4) whether the methodology is generally accepted within the scientific community. *Daubert*, 509 U.S. 593-94.

The *Daubert* factors were not intended to be "a definitive checklist or test." *Id.* at 593. Rather, the *Daubert* analysis is a "flexible" one and the factors may or may not be applicable depending upon the issue and the expert. *Pipitone v. Biomatrix, Inc.* 288 F.3d 239, 244 (5th Cir. 2002); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("*Daubert* factors are "illustrative, not exhaustive; not all of them will apply in every case."). In other words, the trial judge has considerable leeway when deciding whether expert testimony is reliable.

In this case, Defendant, SIEMENS seeks to have the expert testimony of Robert Durham

and Michael Brady excluded on the grounds these experts did not use the magic words "highly improbable ignition source" when rendering their opinions and that their opinions are not supported by scientific methodology.  However, no magic words are required when analyzing the reliability of expert testimony under *Daubert*.  Additionally, contrary to Defendant's assertion, Plaintiffs' experts' explained their methodology in reaching the conclusion that the un-approved Wal-Mart fan was the more probable cause of the fire.  As such, the expert testimony is sufficiently reliable and should be admitted.

A.    **The testimony of Plaintiffs' experts satisfies the spirit of *Bitler* and is reliable enough to satisfy a *Daubert* analysis even though the magic words "highly improbable ignition source" were not used.**

Defendant's assertion that Mr. Brady's testimony should be excluded because he was unable to testify that the UPS was a "highly improbable ignition source" is wholly unfounded.  Mr. Brady was the cause and origin expert and specifically testified that after identifying the area of origin, he handed the investigation over to an electrical engineer to determine which of the potential ignition sources within the area of origin may have caused the fire.  Mr. Brady's expert opinions in this matter do not relate to a specific ignition source, i.e., identifying the cause of the fire was not his role in the investigation.

Instead, Michael Brady rendered an opinion regarding the fire's area of origin.  He described in detail the fire's burn patterns and how he reached the conclusion that the fire started somewhere behind the desk.  (*See* Brady Dep. pg. 43-46, Nov. 2, 2011, attached hereto as Exhibit "C".)  Moreover, the Fire Marshal and Defendant's own cause and origin expert agree with the area of origin identified by Mr. Brady.  (*See* Scardino Dep. 75:24-76:8, Oct. 28, 2011, attached hereto as Exhibit "D.")  As such, Mr. Brady's testimony regarding the area of origin is sufficiently reliable and should be admitted.

With regard to the testimony of Robert Durham, Dr. Durham's expert report and deposition testimony make it clear that in his opinion the un-approved Wal-Mart fan installed by Defendant's employee is the probable cause of the subject fire. Although Dr. Durham cannot rule out the UPS as the cause of the fire, he believes to a degree of engineering certainty that the un-approved fan started the fire. (*See* Durham Dep. 179:4-6, Oct. 19, 2011, attached hereto as Exhibit "E.") The degree of certainty expressed by Dr. Durham is sufficient to satisfy Rule 702 and *Daubert. See Goebel v. Denver and Rio Grande Western R.R. Co.*, 346 F.3d 987, 999-1000 (10th Cir. 2003) (holding any weaknesses in the expert's differential diagnosis opinion, such as the failure to rule in or out other possible alternative causes, may be addressed during cross-examination).

Defendant, relies on *Bitler v. A.O. Smith Corp*., 400 F. 3d 1227 (10th Cir. 2005), for the proposition that an expert must "eliminate other possible sources as highly improbable, and must demonstrate that the cause identified is highly probable." However, the *Bitler* case does not require the magic words "highly improbable" to satisfy *Daubert*. The spirit of *Bitler* is satisfied by Dr. Durham's testimony which clearly states Dr. Durham's opinion that the un-approved fan is the more likely cause of the fire. Specifically, Dr. Durham testified as follows:

> Q:    Are you able to assign, let's say, percentages to the probability that it was a fan versus the UPS?
> A:    I would say to a degree of engineering certainty it was the fan. Based on my examination, based on my training and experience, the failure of the - - the failure we see on the UPS, although it potentially could be the source of the flame, I don't believe it's more probable because the failure of that variety is more typically associated with a result, an energized result as opposed to an energized source.
> Q:    So let me ask you this. Again, just in terms of quantifying it.
> A.:   Uh-huh.
> Q:    It's not 50/50, is it?
> A:    No, sir.
> Q:    Okay. How would you ascribe percentages?
> A:    I would say that it is more probable that the fan was the source.

Q:    51/49?
A:    Right, it's more probable.  That's as far as I can go.  **To a degree of engineering certainty, the fan was the source.**

(Ex. E, at 178:9-179:6) (emphasis added.)   Defendant's attempt to push Dr. Durham into quantifying the probabilities was unrealistic.   The *Bitler* Court did not require a certain percentage of probability, and such a requirement would be inconsistent with the flexible nature of a *Daubert* analysis.   Defendant's characterization of Dr. Durham's testimony is misleading and nothing more than semantic gamesmanship.   In response to opposing counsel's questions, Dr. Durham <u>never</u> wavered in his opinion that the fan was the source of the fire.   He even explained why the fan was a more probable source than the UPS.   Such testimony satisfies the reliability standards set forth in Rule 702 and *Daubert*.

**B.      The opinions rendered by Plaintiffs' experts are supported by reliable scientific methodology and thus satisfy the standard for admissibility.**

Defendant attempts to exclude Dr. Durham's testimony by arguing there is no scientific support for his opinion which is based solely on his "understanding of the typical failure mode of similar fans."   However, this argument ignores Dr. Durham's extensive background[2] and the fact that additional testing is not a prerequisite to admissibility.

With respect to fire cases, it has been observed that there is often no direct evidence of causation, and that appropriate methodology often involves circumstantial evidence and inference.   *Hickerson v. Pride Mobility Products Corp.*, 2006 WL 290587, *3 (W.D. Mo. 2006) (fire cases "often depend on circumstantial evidence and reasonable inferences"); *see also Torske v. Bunn-O-Matic Corp.*, 2005 WL 1717649, *3 (D.N.D. 2004).   This does not detract from the "substantiality" of an expert's opinions.   *Allstate Insurance Co. v. Hugh Cole Builder, Inc.*, 137

---

[2] Notably, Defendant takes issue with the expert opinion being based upon Dr. Durham's understanding and experience, but Defendant has not pointed to any deficiency in Dr. Durham's credentials as an expert witness.

F. Supp. 2d 1283, 1289 (M.D. Ala. 2001) ("the fact that much of [an expert's] data constitutes circumstantial evidence does not of itself detract from their substantiality"). Accordingly, Dr. Durham is permitted to reasonably infer when forming his expert opinions. *See McGee v. Evenflo Co., Inc.*, 2003 WL 23350439, *4 (M.D. Ga. 2003) ("The *Daubert* factors . . . should not be used to disfavor expert testimony . . . which is grounded in experience or practice rather than pure scientific theory.").

Additionally, reasonable inferences need not always be subjected to additional testing. *See Bitler*, 391 F.3d at 1122 ("[e]mploying his experience and knowledge as a fire investigator, [he] observed the physical evidence at the scene of the accident and deduced the likely cause of the explosion. Although such a method is not susceptible to testing or peer review, it does constitute generally acceptable practice as a method for fire investigators to analyze the cause of fire accidents. Nothing in Rule 702 or *Daubert* requires more."); *Morales v. E. D. Etnyre & Co.*, 382 F. Supp. 2d 1252 (D.N.M. 2005) (explaining that testing not required for the admission of an engineer's opinion where the opinion was based on the expert's experience, training, observations and deductive reasoning); *Workman v. AB Electrolux Corp.*, 2005 WL 1896246, *10 (D. Kan. 2005) (explaining that independent testing is not required when opinion based on "widely accepted principles such as energized conductors being capable of short circuiting events, the electrical conductivity of metal, and the capacity of short-circuit events to start fires."); *McCoy v. Whirlpool Corp.*, 2003 WL 1923016, *3 (D. Kan. April 21, 2003) ("[I]ndependent testing is not *sine qua non* of admissibility under *Daubert*."). Therefore, any lack of additional testing is not dispositive of the issue of admissibility.

Furthermore, Defendant is incorrect in its assertion that Dr. Durham did not perform testing. "A hypothesis can be tested either physically by conducting experiments or by

analytically by applying scientific principles in 'though experiments.'" *See* National Fire Protection Association, *Guide for Fire and Explosion Investigations*, NFPA 921 (Quincy 2008). In other words, physical experiments are not the only method by which to "test" a hypothesis. Dr. Durham properly and appropriately applied scientific principles to test his hypothesis that the fan was the probable cause of the fire by considering all the available facts and data as well as the body of literature in the industry regarding the common failure of fans. (Ex. E at 191:10-14.) His conclusions are based on a detailed examination of the damaged evidence and his observations provide a basis for a person with expertise in electrical devices to form an opinion. As such, Defendant's arguments that Dr. Durham should have done more go to the weight, rather than the admissibility of the expert testimony. *See In re TMI Litigation*, 193 F.3d 613, 665 (3d Cir. 1999) ("The analysis of the conclusions themselves is for the trier of fact when the expert is subject to cross-examination.")

## IV. DISMISSAL BASED ON ALLEGED SPOLIATION IS NOT WARRANTED, BECAUSE PLAINTIFFS DID NOT ACT IN BAD FAITH AND THERE IS NO EVIDENCE OF "ACTUAL" PREJUDICE.

Defendant's Motion for Summary Judgment on the issue of spoliation is tantamount to a request for sanctions. *See Donohoe v. American Isuzu Motors, Inc.,* 155 F.R.D. 515, 519 (M.D. Pa. 1994). However, spoliation sanctions are only proper when a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and the adverse party was prejudiced by the destruction of the evidence. *Henning v. Union Pac. R.R. Co*., 530 F.3d 1206, 1219–20 & n.6 (10th Cir. 2008); *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). Additionally, when a party seeks a drastic sanction such as an adverse inference or outright dismissal, that party <u>must</u> prove bad faith. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149-50 (10th Cir. 2009). This is because mere negligence in

compromising evidence does not establish the level of culpability required for such drastic sanctions. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997); *see also Baliotis v. McNeil*, 870 F. Supp. 1285, 1289 (M.D. Pa. 1994) (explaining that a sanction that has the drastic result of judgment being entered against a party must be regarded as a last resort, to be imposed only if no alternative remedy by way of a lesser, but equally efficient sanction is available).

In this case, Defendant has failed to establish bad faith on the part of Plaintiffs and also has failed to prove any actual prejudice. Therefore, dismissal based on spoliation is not warranted.

### A. There is no evidence of bad faith on the part of Plaintiffs.

In support of its argument, Defendant relies on *Henkel Corp. v. Polyglass United States*, 194 F.R.D. 454, 457 (E.D.N.Y. 2000). However, Defendant's reliance on this Eastern District of New York case is misplaced. Under New York law, there need not be a finding of bad faith to impose a severe sanction. *See Crown Castle USA, Inc. v. Fred A. Nudd Corp.*, 2010 WL 1286366, at *10 (W.D.N.Y. Mar. 31, 2010) ("A finding of bad faith or intentional misconduct is not a sine qua non to sanctioning a spoliator."). In contrast, the Tenth Circuit Court of Appeals has consistently held that a finding of bad faith is necessary. *See Henning*, 530 F. 3d at 1220. In this case, Defendant's Motion for Summary Judgment is fatally flawed in that Defendant does not even allege bad faith.

Even if bad faith were alleged, there is no evidence supporting such an assertion. The scene was altered as early as the night of the fire by Muskogee Diagnostic before Plaintiffs were involved. Notably, Plaintiffs' expert inspected the fire scene on November 26, 2008. (*See* Ex. C at 33-35.) Prior to this initial inspection, Muskogee Diagnostic had already removed the fire damaged contents from the buildings and begun repairs. (*See* Ex. C at 23-27.) Although the

Plaintiffs are said to have stepped into the shoes of their insured, their power to control the scene and to exercise authority over the preservation or destruction of evidence is a relevant factor in determining responsibility. *Howell v. Maytag*, 168 F.R.D. 502, 506 (M.D. Pa. 1996). Therefore, any modification of the fire scene or alleged mishandling of evidence before Plaintiffs' involvement cannot be said to have been done in bad faith.

### B. Dismissal is not warranted, because Defendant has failed to establish actual prejudice.

Significantly, Defendant has not established how it was prejudiced by Plaintiffs conduct. In fact, Defendant has not even presented a working theory as to how it may have been theoretically prejudiced. Instead, Defendant makes the conclusory statement "the fire scene had been completely altered without Siemens having had the opportunity to inspect it." (*See* Def.'s Mot. to Preclude Pl.'s Experts (Dkt. 67), pg 19.) This conclusory statement does not establish how Defendant's position would have been improved had it been afforded the opportunity to inspect the fire scene prior to repairs.

Similarly, Defendant makes the blanket statement that "material fire scene evidence was destroyed, mishandled and misidentified by Plaintiffs and their experts." (*See* Def.'s Mot. to Preclude Pl.'s Experts (Dkt. 67), pg 19.) However, Defendant has failed to even speculate as to how any evidence no longer available may have been "material." Defendant has also failed to explain why the alleged mishandling and misidentification of certain evidence has negatively impacted its investigation. A blanket assertion of prejudice is not enough to satisfy Defendant's burden of establishing the reasonableness of the requested sanctions. *See Rowe v. Albertson's, Inc.*, 2006 WL 1484918, *2 (10th Cir. 2006) (holding party requesting dismissal has burden of proving dismissal is warranted); *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir.1998)

(holding that party requesting sanction must produce substantial evidence explaining how the destroyed evidence would have been relevant to the contested issue); *see also* Michael H. Graham, Federal Practice and Procedure § 7003 n.12 (interim ed.2006) ("sponsor of the inference must proffer evidence sufficient to permit the trier [of fact] to find . . . the document's potential relevance to [the] claim.").

In any event, even if Defendant had theorized as to how it may have been prejudiced, there is no evidence of *actual* prejudice. *See Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1150 (10th Cir. 2009) (noting it was proper to refuse imposition of even lesser sanctions when there was no evidence of "actual" prejudice as opposed to "theoretical" prejudice); *Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007) (same). Defendant's own employee was sent to the fire scene on November 24, 2008, just two days after the fire and two days <u>before</u> Plaintiffs' expert had the opportunity to view the scene. (*See* Pl.'s Mot. for Summ. J., Ex. L at 12:22-24.) Mr. Eberle sifted through the fire debris in search of Siemens equipment and also was able to speak to the Muskogee Diagnostic employees that described to him the layout of the area. (*See* Pl.'s Mot. for Summ. J., Ex. L at 18:16-23.) This makes Defendant's claim of spoliation counterintuitive given that Defendant arguably had a <u>better</u> view of the evidence than Plaintiffs' experts.

Additionally, while at the fire scene, Mr. Eberle notified Siemens' manager Jeffrey Spicer that the fire damage was extensive. (*See* Pl.'s Mot. for Summ. J., Ex. L at 17:22-18:9.) Despite his knowledge that Siemens equipment was involved in a severe fire, Mr. Spicer chose to put his head in the sand and ignore his opportunities to investigate.

Moreover, even if the Court excuses Defendant's purposeful ignorance prior to being placed on notice by Plaintiffs, Defendant had the opportunity to review the same photographs of

the fire scene that Plaintiffs' experts reviewed.  Defendant was also able to interview the same witnesses and examine the evidence preserved.     This information provided Defendant with sufficient grounds to mount its defense.  *See United States v. Gardner*, 211 F.3d 1049, 1054 (7th Cir. 2000) (noting that reports, photographs, third-party observations and hearsay may serve as a reliable factual basis under *Daubert* for the expert testimony regarding fire cause and origin); *see also Gussack Realty Corp. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir. 2000) ("[A]n expert may rely on data that she did not personally collect.").

Furthermore, although Defendant claims it was prejudiced, its experts had sufficient evidence with which to render an opinion regarding Plaintiffs' claim that the un-approved fan was the cause of the fire.  (*See* Pl.'s Mot. for Summ. J., Ex. P at 11:15-17.)  As such, not only is Defendant able to cross-examine the plaintiff's experts, but it is also able to call its own expert to render a contrary opinion.  This clearly demonstrates Defendant has not been truly prejudiced as it claims.  Accordingly, the request for dismissal based on spoliation of evidence should be denied.

## V.     DEFENDANT'S REQUST FOR DISMISSAL DUE TO FAILURE TO ATTACH AFFIDAVIT OF EXPERT SHOULD BE DENIED BECAUSE OKLAHOMA STATUTE TITLE 12, SECTION 19 IS NOT APPLICABLE TO THIS LAWSUIT.

Oklahoma Statute, Title 12, Section 19 only applies to claims of professional negligence.  Although Defendant claims the services provided by SIEMENS should be classified as "professional services," the services were not professional in nature such as medical services or legal services.   Defendant has not provided a sufficient basis for the Court to extend the applicability of the statute beyond the traditional concept of professional negligence.  As such, the statute should not apply.

Additionally, even if Plaintiffs' claims did constitute professional negligence, the statute

is still not applicable to this lawsuit. Defendant chose to remove this case to federal court. Once in federal court, Oklahoma state pleading requirements are no longer grounds for dismissal. *See Spottedcorn v. Advanced Correctional Healthcare, Inc*., 2011 WL 6100653, *1 (W.D. Okla. Dec. 7, 2011) (denying the defendant's motion to dismiss on the grounds the plaintiff is not required to comply with the state pleading requirements of 12 Okla. Stat. § 19 in federal court).

WHEREFORE Plaintiffs, ASSURANCE COMPANY OF AMERICA, as subrogee of PARK PLAZA, INC., DOVE MEDICAL, INC., and DR. TIMOTHY ROBISON, and HARTFORD CASUALTY INSURANCE COMPANY, as subrogee of Muskogee Diagnostic Imaging Center, respectfully request this Court deny Defendant's Motion for Summary Judgment and Motion to Preclude Plaintiffs' Experts Robert Durham and Michael Brady from Offering Causation Testimony in their entirety.

Respectfully submitted,

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

*/s/ Mary Jo Kuusela*
Hobart M. Hind, Jr., *Admitted Pro Hac Vice*
Florida Bar No. 101590
hhind@butlerpappas.com
Mary Jo Kuusela, *Admitted Pro Hac Vice*
Florida Bar No. 0652687
mkuusela@butlerpappas.com
777 S. Harbour Island Boulevard, Suite 500
Tampa, Florida 33602
Telephone:     (813) 281-1900
Facsimile:     (813) 281-0900

- and –

Dean S. Rauchwerger (admitted *pro hac vice*)
Michael S. Errera (admitted *pro hac vice*)
Clausen Miller P.C.
10 S. LaSalle Street, 16th Floor
Chicago, IL 60603
312-855-1010

- and –

 Mark Warman
 Wilkerson, Wassall & Warman, P.C.
 15 West Sixth Street, Suite 2301
 Tulsa, Oklahoma 74119-5412
 918-582-4440

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

   I certify that on December \_\_\_, 2011, Mary Jo Kuusela electronically filed the attached using the CM/ECF system which will send notification of this filing to the following listed attorneys:

Randall E. Long, Esq.
John H. Tucker, Esq.
Karry R. Lewis, Esq.
Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C.
Post Office Box 21100
Tulsa, OK  74121-1100

Dean S. Rauchwerger, Esq.
Michael Errera, Esq.
Clausen Miller P.C.
10 South LaSalle Street
Chicago, IL  60603

Robert W. Littleton, Esq.
Joseph Lipari, Esq.
Littleton Joyce Ughetta Park & Kelly, LLP
39 Broadway 34th Floor
New York, NY  10006

Mark A. Warman, Esq.
Wilkerson, Wassall & Warman, P.C.
15 West Sixth Street, Suite 2301
Tulsa, OK  74119


      *s/ Mary Jo Kuusela*_____
      MARY JO KUUSELA, ESQ.

## Index of Exhibits

| Exhibit Letter | Exhibit Description |
| --- | --- |
| A | Deposition Transcript of Mr. Gerald Finis, October 25, 2011 |
| B | Deposition Transcript of Mr. Jeff Spicer, October 21, 2011 |
| C | Deposition Transcript of Mr. Michael Brady, November 2, 2011 |
| D | Deposition Transcript of Mr. Dennis Scardino, October 28, 2011 |
| E | Deposition Transcript of Dr. Robert Durham, October 19, 2011 |